IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08–cv–00763-DME-KMT

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,

    Plaintiff,

v.

ROBERT ORLOWSKI,
DEBORAH CHRISTINE MORRISON,
EVERGREEN ASSETS, LLC
MICAIAH FOUNDATION,
HINSDALE ASSET MANAGEMENT, and
FORTRESS MANAGEMENT, LLC,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Kathleen M. Tafoya**
**United States Magistrate Judge**

This case comes before the court on plaintiff's Motion to Enforce Settlement Agreement ("Mot.") [Doc. No. 131, filed October 15, 2008]. Defendants filed a Response to the Motion on October 28, 2008 [Doc. No. 141] and plaintiff filed a Reply on November 17, 2008. [Doc. No. 142.] A hearing on the motion was held on March 16, 2009.

*Procedural Background*

Plaintiff American Family Mutual Insurance Company commenced this declaratory judgment action in order to obtain a Court determination of whether insurance coverage existed

for a claimed theft loss reported by Defendants Robert Orlowski and Debra Christine Morrison for certain items of jewelry, as well as for a determination of the parties' rights and obligations pursuant to the insurance contract under the circumstances attending the reported theft loss. [Compl., Doc. No. 1.] Certain items of jewelry located and recovered by American Family during the investigation of the defendants' insurance claim were placed in the registry of the Court pending the resolution of the suit. [Doc. Nos. 68, 76, 92, 93, 94 and 99.]

Defendants Morrison and Orlowski responded to the Complaint by filing a document entitled "Declaration in the Nature of a Verified Affidavit of Truth" dated April 25, 2008. [Doc. No. 19.] The prolix text of the document included denials of certain of plaintiff's allegations as well as affirmative factual allegations and legal claims by defendants against the plaintiff. Plaintiff moved for a more definite statement with respect to defendants' answers to the factual allegations of the Complaint and regarding the apparent counterclaims being asserted by defendants. [Doc. No. 24.] While the Motion for More Definite Statement was pending, defendants filed a second "Declaration in the Nature of a Verified Affidavit of Truth," dated May 19, 2008. [Doc. No. 30]. Plaintiff moved to stay the proceedings, and defendants, for the first time in their response to that motion, made an allegation entitled "Bad Faith Denial of Insurance Claim by Plaintiff American Family Mutual Insurance Company." [Doc. No. 45 at 2.] This court issued an Order striking both Declarations and required the defendants to file any Answer and Counterclaims in conformity with the Federal Rules of Civil Procedure and the

Local Rules of Practice. [Doc. No. 40.]  Defendants Morrison and Orlowski then filed "Notices of Default," again referencing "Re: Bad Faith Denial of Insurance Claim." [Doc. Nos. 39, 60.][1]

Defendants Morrison and Orlowski finally filed their Answer, together with a Motion to Dismiss on July 10, 2008 [Doc. No. 57], reasserting claims made previously in their Declarations in the Nature of Verified Affidavits of Truth and First Notice of Default.  This Motion to Dismiss was pending at the time of the August 8, 2008 settlement conference.

Defendants Morrison and Orlowski filed a second Motion to Dismiss on July 28, 2008 [Doc. No. 77] in which they claimed that the allegations in their prior Declaration in the Nature of a Verified Affidavit of Truth and the allegations in their prior Notice of Default were still in effect despite the Court's prior rulings on these pleadings.  That Motion, too, was pending at the time of the August 8, 2008 settlement conference.

The other defendants, Evergreen Assets, Micaiah Foundation, and Hinsdale Asset Management filed their Answers on May 7, 2008, denying the allegations of the Complaint and moving for dismissal [Doc. Nos. 21, 22, and 23]. The Answers were signed by James Deal, as President of Fortress Management, Inc.  Plaintiff filed Responses in opposition to the Motions to Dismiss on May 27, 2008. [Doc. Nos. 27, 28, and 29.] These motions were also pending at the time of the August 8, 2008 settlement conference.

On July 18, 2007, the parties submitted their joint proposed Scheduling Order in which plaintiff restated its claims for declaratory relief and determination of the parties' rights and

---

[1] The Notices were not proper requests to enter default or default judgment and default was not entered. [Doc. No. 53.]

obligations under the insurance policy, and in which Defendants Morrison and Orlowski reiterated their allegations of wrong-doing and bad faith on the part of plaintiff in the investigation of the claim and allegations of a contract created by defendants' filings in this case. [Doc. No. 65.] The Scheduling Order was signed by the Court on July 22, 2008. [Doc. No. 74.]

### *Settlement Negotiations*

The settlement conference on August 8, 2008 began at 10:30 a.m. and concluded at approximately 4:10 p.m. For the better part of six hours the parties negotiated indirectly from separate rooms with this Magistrate Judge acting as mediator. At the conclusion of that conference, the parties reached a settlement of all claims related to the reported theft loss and insurance claim, and all claims which were or could have been brought in this case. A summary of the settlement terms and the parties' agreement to settle the case was placed on the court record on August 8, 2008, at approximately 4:00 p.m. The transcript of that record appears on the court docket as Exhibit One to Plaintiff's Reply in Support of Motion to Enforce Settlement. [Doc. No. 142-2 (hereinafter "Trans.")]. The transcript includes the following general terms of the settlement between the parties:

1.) All six (6) defendants would release any claims that were brought or could have been brought arising from the loss reported by Mr. Orlowski and Ms. Morrison relating to the jewelry in the registry of the Court or any jewelry that was covered by the American Family homeowner policy at issue in this declaratory judgment action. (Trans., p. 4, l. 25 to p. 5, l. 6.)

2.)     All parties would execute a mutual release of all claims that were brought or could have been brought in this lawsuit. (Trans., p. 5, ll. 7-9.)

3.)     Robert Orlowski and Deborah Morrison will be responsible for obtaining the releases from the other entities listed as defendants in the case. (Trans., p. 5, ll. 9-11.)

4.)     The Release language will include that none of the parties admit any liability in the action. (Trans., p. 5, ll. 16-17.)

5.)     The release language will also include excerpted language from the policy regarding loss of personal property obtained voluntarily from the insured by swindling, fraud, trick or false pretense. (Trans., p. 5, ll. 17-21.)

6.)     The Release will include a release of all of defendants' claims for losses under the policy. (Trans., p. 5, ll. 21-22.)

7.)     Mr. Orlowski and Ms. Morrison agreed that these terms represented the Settlement Agreement between all of the parties of this lawsuit, and that they would cooperate in preparing the documents to memorialize the settlement. (Trans., p. 6, ll. 16-24; p. 7, ll. 12-13; p. 8, ll. 9-25; and p. 9, ll. 16-22).

After the settlement conference, on August 19, 2008, plaintiff forwarded to Defendants Orlowski and Morrison the first draft of the Settlement Agreement and Mutual Release of All Claims, (Mot., Exh. A), and on August 26, 2008, before any response was received from defendants, plaintiff forwarded a second draft of the Settlement Agreement and Mutual Release of All Claims to defendants, correcting minor typographical errors in the first draft and including a statement requested by the defendants at the settlement conference, which had inadvertently

been left out of the recitals in the first draft. (Mot., Exh. B.) Plaintiff sent further correspondence on September 11, 2008, seeking defendants' cooperation in closing the case. (Mot., Exh. C.)

The parties spoke on the telephone on or about September 12, 2008. Defendant Orlowski advised the plaintiff's attorney that he would not sign the settlement agreement because he was waiting for the Court to rule on his Motion to Dismiss filed before the settlement conference, including his request that the Magistrate Judge produce her Oath of Office for inspection.[2] (Mot., Exh. D.) The Motion to Enforce Settlement Agreement followed.

At the hearing held on March 16, 2009, Defendants Morrison and Orlowski advised the Court that they did not intend to sign a settlement agreement releasing all of their claims that were asserted or could have been asserted in this action. Defendants now allege that their agreement was only to disclaim any interest in the jewelry being held in the registry of the Court, with the exception of the items which, under the settlement agreement, would be returned to them.[3] They now claim that ownership of the jewelry was the only issue in the controversy at the time the settlement was reached.

---

[2]The request to produce the Oath of Office was denied by the court on several previous occasions.

[3]Among the terms of the agreement that are not now in dispute was the stipulation that the jewelry recovered by American Family during its investigation would be distributed by American Family relinquishing all right to and transferring possession of a loose cut 2.2 carat pear-shaped yellow diamond to Robert Orlowski and Debra Morrison and all defendants relinquishing all right to and transferring possession of four rings that American Family purchased from David Shaneman in Chicago, Illinois.

*Legal Standards*

A settlement agreement is a contract between the parties to end judicial proceedings. *DiFrancesco v. Particle Interconnect Corp.*, 39 P.3d 1243, 1247 (Colo. App. 2001); *Citywide Bank of Denver v. Herman*, 978 F. Supp. 966, 977 (D. Colo. 1997); *Rauch v. Sutphin Elec. Motors Corp.*, 2007 WL 184667, *4 (D. Colo. 2007). The court must apply state contract law to issues involving the formation, construction, and enforcement of a settlement agreement. *United States v. McCall*, 235 F.3d 1211, 1215 (10th Cir. 2000). "A settlement agreement need not be in writing to be enforceable." *In re Custody of Nugent*, 955 P.2d 584, 589 ((Colo. App. 1997). *See also Yaekle v. Andrews*, 195 P. 3d 1101, 1108 (Colo. 2008) (the language of Colo. Rev. Stat. 13-22-308(1) does not abrogate the common law principles of contract formation and the ability of the parties to create binding oral agreements.); *GLN Compliance Group, Inc. v. Aviation Manual Solutions, LLC*, — P.3d —, 2008 WL 4592371, *11 (Colo. App. Oct. 16, 2008) (same). *But see Spatziani v. Corrections Corp. of America*, 2009 WL 586386 (D. Colo. 2009) (written agreement may be a material term of a settlement agreement).

A settlement and compromise is a contract to end judicial proceedings, and accordingly, for it to be binding and enforceable, there must be a "meeting of the minds" as to its terms and conditions. *H. W. Houston Construction Co. v. District Court*, 632 P.2d 563, 565 (Colo. 1981). The Tenth Circuit has stated, "We construe a settlement stipulation in the same manner as a contract to determine how it should be enforced." *Republic Resources Corp. v. ISI Petroleum West Caddo Drilling Program 1981*, 836 F.2d 462, 465 (10th Cir. 1987). The existence of a

settlement agreement, like any contract, is generally a question of fact. *DiFrancesco*, at 1247; *Kaufman v. American Family Mut. Ins. Co.*, 2007 WL 437641, *1 (D. Colo. 2007) (regarding a letter which plaintiff claimed constituted a settlement agreement). The fact that parties contemplate preparing a written agreement does not necessarily render a verbal agreement invalid. *DiFrancesco*, at 1248.

A contract cannot be rescinded or avoided because one party made a unilateral mistake concerning a contract term. *In re Marriage of Manzo*, 659 P.2d 669, 672 (Colo. 1983). A trial court may summarily enforce a settlement agreement entered into during the litigation if it is undisputed that a settlement exists. *DiFrancesco*, at 1247; *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004); *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993); *Rauch v. Sutphin Elec. Motors, Corp.*, 2007 WL 184667, *4 (D. Colo. 2007). Likewise, "later dissatisfaction with the terms of a stipulated compromise agreement is not sufficient grounds to set it aside." *Royal v. Colorado State Personnel Board,* 690 P.2d 253, 255 (Colo. App. 1984); *Recreational Development Co. of America v. American Const. Co.,* 749 P.2d 1002, 1005 (Colo. App. 1987). Changing one's mind about a contract is not grounds to avoid the ramifications of an enforceable contract. As stated in *Woods v. Denver Dep't. of Revenue, Treasury Div.*, 45 F.3d 377, 378 (10th Cir. 1995), "a party who knowingly and voluntarily authorizes the settlement of her claims cannot avoid the terms of the settlement simply because she changes her mind."

There is a strong public policy favoring dispute resolution rather than continued litigation. "When considering alternative consequences, we will defer to results that encourage

the settlement of disputes." *Smith v. Zufelt*, 880 P.2d 1178, 1185 (Colo. 1994); *see also Copper Mountain, Inc. v. Poma of Am., Inc.*, 890 P.2d 100, 106 (Colo. 1995) (important public policy exists in favor of resolution of disputes); *Colo. Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142 (Colo. 1992) (public and judicial policies favor the settlement of disputes); *White v. Jungbauer*, 128 P.3d 263, 265 (Colo. App. 2005)(similar).

### *Findings*

The Court finds the parties reached an agreement during the August 8, 2008 settlement conference, and confirmed that agreement on the record in court on the same day.

The Court finds the settlement terms were clearly set forth on the record on August 8, 2008, and included the agreement by both parties to release all claims which could have been brought as part of this action.

The Court finds the contemplated and agreed to 'release of all claims' included all allegations asserted by the plaintiff and the defendants in their filings and in this case and all claims that could have been filed by the plaintiff and the defendants in this case arising from the insurance claim for lost or stolen jewelry in December of 2006. That release included all allegations and claims asserted by the parties in their court filings in this case, whether stricken or not, and all allegations and claims asserted in the parties' motions, whether ruled upon or not as of the time of settlement.

The Court finds that ownership of the jewelry in the registry of the Court was not the only disputed claim or issue appearing in or arising out of the facts of the case and controversy.

The Court finds that Defendants Orlowski and Morrison, despite the fact a settlement of all claims had occurred on August 8, 2008, now seek to alter the terms of that settlement in an attempt to preserve claims that they had originally agreed to release on August 8, 2008.

The Court finds Defendants Orlowski and Morrison have simply changed their minds as to the release of their own potential claims against the plaintiff, seeking the right to go forward on their claims against the plaintiff while still insisting that the plaintiff release all its claims against them.

WHEREFORE it is hereby RECOMMENDED:

1. Plaintiff's Motion to Enforce Settlement Agreement [Doc. No. 131] be GRANTED.

2. Distribution of the items in the Court Registry be as follows:

Pursuant to the Court Order of Deposit [Doc. No. 99], to plaintiff, American Family Mutual Insurance Company items:

    a. one 18KT white gold ladies cast and assembled diamond unity ring, radiant shape cut diamond, 1.07 CT, identified on attached Exhibit A as "4 LADIES RING";

    b. 14KT white gold ladies cast and assembled diamond unity ring, marquise shaped cut diamond, 1.04 CT, identified on attached Exhibit A as "5 UNITY RING";

    c. 18KT white gold ladies cast diamond unity ring, princess cut diamond, 1.04 CT, identified on attached Exhibit A as "6 LADIES RING";

    d. 14KT white gold ladies cast and assembled diamond unity ring, oval shaped cut diamond, 1.01 CT, identified on attached Exhibit A as "8 LADIES RING".

   Pursuant to the Court Order of Deposit [Doc. No. 99], to Defendants Robert Orlowski and Deborah Christine Morrison item:

   e. Pear-shaped diamond, loose stone, approx. 2.20 cts.

It is FURTHER RECOMMENDED

   3. The case, having been settled by mutual agreement of the parties on August 8, 2008, including dismissal and release of all claims by all parties, be dismissed with prejudice, each party to pay his, her or its own costs and fees.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's

decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review);  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiff waived its right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 15th day of April, 2009.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge